UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOSEPH L. SABLIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:11-CV-286 |
| | ) | |
| JUAN CARLOS GUTIERREZ, Fort | ) | |
| Wayne City Police Officer # 1769, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Enforce Settlement Agreement against Plaintiff Joseph Sablic filed on October 31, 2012.[1] (Docket # 36.) Sablic brought this 42 U.S.C. § 1983 action against Defendants Fort Wayne Police Officers Juan Gutierrez and Keith Wallace on July 18, 2011, alleging that they falsely arrested him and used excessive force against him following a traffic stop. (Docket # 1, 20.)

A status conference was held on November 1, 2012, at which Sablic; his attorney, Christopher Myers; and Defendants' attorneys, Robert Keen and Kelly Pautler, appeared. (Docket # 39.) At the conference, oral argument on Defendants' motion was heard and concluded from Sablic and Defendants' counsel,[2] and the Court took the motion under advisement. For the following reasons, the Court will GRANT Defendants' Motion to Enforce

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (*See* Docket # 7.)

[2] Attorney Myers stated at the hearing that he could offer no reason why the Memorandum of Agreement should not be enforced, and thus Sablic offered his own statement.

Settlement Agreement.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In this § 1983 action, Sablic alleges that Defendants falsely arrested him and used excessive force against him in November 2009 following a traffic stop in which he was a passenger in the vehicle. (Docket # 20.)  Specifically, Sablic purports that when he "didn't get on the ground fast enough," one or more Defendants beat him with a baton and then tased him. (Second Am. Compl. ¶ 4.)  The Court held a scheduling conference on October 27, 2011, and set a final pretrial conference for November 1, 2012, and a three-day jury trial for December 4, 2012. (Docket # 11.)  In June 2012, Defendants filed a motion for partial summary judgment, seeking the dismissal of two of the four Defendant Officers that Sablic originally named in his complaint (Docket # 23); Sablic later conceded that the two officers were not involved in the incident, and summary judgment was then granted in their favor (Docket # 30, 31).

On October 22, 2012, the parties participated in mediation with mediator Erik Chickedantz. (Defs.' Mem. of Law in Supp. of Defs.' Mot. to Enforce Settlement Agreement (Defs.' Mem. of Law") 1.)  Present at the mediation were: Sablic; Ilene Smith, Sablic's counsel; Carol Helton, the city attorney for the City of Fort Wayne; and Robert Keen, Defendants' counsel. (*Id*.)

At the November 1st hearing, Attorney Keen explained that the negotiations at the mediation went back and forth for three hours. (Docket # 39.)  Sablic initially demanded $30,000, and Defendants initially offered $1,500. (*Id*.)  As the afternoon progressed, Sablic moved to $20,000, then $12,000, and then $9,500, while Defendants moved to $2,500, $3,000, and then $3,500. (*Id*.)  When the parties were at $9,500 and $3,500 respectively, Mediator

Chickedantz recommended a settlement amount of $5,000, and the parties agreed to settle the case for that sum. (*Id.*)

The terms and conditions of this settlement were memorialized in a Memorandum of Agreement, which was signed at the mediation by Sablic, Attorney Smith, Helton, Attorney Keen, and Mediator Chickedantz. (Defs.' Mem. of Law 1; Defs. Mot. to Enforce Settlement Agreement ("Defs.' Mot.") Ex. A.) Under the Memorandum of Agreement, Defendants are to pay Sablic $5,000 within fourteen days from the date of Sablic's signing of a full and final release, which would release all claims, known or unknown, that Sablic had against Defendants as of October 22, 2012. (Defs.' Mem. of Law at 1-2; Defs.' Mot. Ex. A.) Defendants' counsel is to send this release to Sablic's counsel for Sablic's signature. (Defs.' Mem. of Law at 2; Defs.' Mot. Ex. A.)

Also at the mediation, Sablic and Attorney Smith entered into a written agreement concerning attorney fees. (Docket # 33.) The agreement provided that Sablic would receive fifty percent of the settlement funds less unpaid costs ($92.29) for a total of $2,407.71, and that his attorneys would receive fifty percent of the settlement funds plus unpaid costs for a total of $2,592.29. (*Id.*)

Just two days later, on October 24, 2012, before Defendants' counsel sent the release, Sablic, acting without his attorney, sent a letter to the Court seeking to rescind both the Memorandum of Agreement and the attorney fee agreement. (*Id.*) In the letter, Sablic claims that he has a bipolar disorder and was coerced into signing the agreements at the mediation. (*Id.*)

At the November 1st hearing, Sablic argued that he was "not in his right mind" when he signed the Memorandum of Agreement, stating that he takes medication for a bipolar disorder

and he improperly relied on Mediator Chickedantz's recommendation to settle the case. (Docket # 39.) Sablic admitted, however, that he knew it was a settlement conference; that he understood its purpose; and that he understood under the attorney fee agreement that he would get one-half of the $5,000 less costs. (*Id*.) At bottom, he claims that he "mainly needs more money" for what allegedly occurred in connection with his arrest. (*Id*.)

### III.  STANDARD OF REVIEW

An agreement to settle claims in a federal court is enforceable "just like any other contract." *Dillard v. Starcon Int'l, Inc*., 483 F.3d 502, 506 (7th Cir. 2007). Local contract law governs issues regarding the formation, construction, and enforceability of a settlement agreement. *Pohl v. United Airlines, Inc*., 213 F.3d 336, 338 (7th Cir. 2000). Under Indiana law, which governs here, an agreement to settle a lawsuit is generally enforceable. *Zimmerman v. McColley*, 826 N.E.2d 71, 76-80 (Ind. Ct. App. 2005). As "[s]ettlement agreements are governed by the same general principles of contract law as any other agreement," they require "[a]n offer, acceptance, [and] consideration." *Id*. at 76.

As regards authority, agreements to settle are "enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454 (7th Cir. 1986) (internal quotations omitted) (applying Indiana law); *accord Whittington v. Tr. of Purdue Univ.*, No. 2:09 cv 9, 2011 WL 1336514, at *2 (N.D. Ind. Apr. 5, 2011) ("The parties must knowingly and voluntarily enter into the agreement either personally or by providing their attorneys with authority to settle."). Once an agreement is reached, "[a] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient . . . ." *Glass*, 788

F.2d at 454. A party who has previously authorized a settlement remains bound by its terms even if he changes his mind. *Id.* at 454-55.

## IV.  DISCUSSION

The Court agrees with Defendants that the Memorandum of Agreement must be enforced. Sablic's signature on the document conclusively shows that he agreed to settle his claims, and nothing in his oral argument or letter to the Court suggests otherwise. "Just because [Sablic] is now unhappy with the settlement is neither here nor there." *Allen v. Dana*, No. 1:10-cv-281, 2011 WL 3163232, at *2 (N.D. Ind. July 26, 2011). "If a party to a . . . suit who has previously authorized a settlement changes his mind . . . , that party remains abound by the terms of the agreement." *Glass*, 788 F.2d at 454-55 (citation omitted).  Here, Sablic admitted at the hearing that, at bottom, he simply wants more money out of his case.

Furthermore, Sablic's conclusory assertion now that he was "not in his right mind" at the mediation is unavailing. "The test for determining a person's mental capacity to contract is whether the person was able to understand in a reasonable manner the nature and effect of his act." *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Indiana, Inc.*, 832 N.E.2d 559, 562 (Ind. Ct. App. 2005); *accord Schroeder v. Polk*, No. 2:93-cv-76AS, 1993 WL 832829, at *6 (N.D. Ind. Dec. 22, 1993). "In order to avoid a contract, the party must not only have been of unsound mind, but also must have had no reasonable understanding of the contract's terms due to his instability." *Wilcox Mfg. Grp.,* 832 N.E.2d at 562; *accord Schroeder*, 1993 WL 832829, at *6.

But here Sablic readily admitted at the hearing that he knew the purpose of the mediation, and there is no indication that he failed to understand the consequences of signing the Memorandum of Agreement. Indeed, the negotiations at the settlement conference went back

and forth for three hours, and he had the assistance of Attorney Smith throughout the process. Moreover, Sablic admitted at the hearing that he understood the terms of the attorney fee agreement, which clearly reflect that he will receive fifty percent (less unpaid costs) of the $5,000 settlement sum. Therefore, Sablic's assertions that he has a bipolar disorder and was "not in his right mind" do not create an escape route for him from the terms of the Memorandum of Agreement.

Likewise, Sablic's "conclusory label of 'duress' adds nothing to [his] assertion that [he] now regrets having agreed to the terms of the settlement." *Tuttle v. SMS Corp. of America*, No. 1:07-cv-1238, 2008 WL 4082433, at *1 (S.D. Ind. Aug. 29, 2008). "In deciding whether a person agreed to settle under duress, 'the ultimate fact to be determined is whether or not the purported victim was deprived of the free exercise of his own will.'" *Allen*, 2011 WL 3163232, at *2 (quoting *Youngblood v. Jefferson Cnty. Div. of Family & Children*, 838 N.E.2d 1164, 1170 (Ind. Ct. App. 2005)). But Sablic does not argue, much less point to evidence, that he agreed to settle against his will, *see id.*, and there is *no* suggestion of any wrongful act on the part of Defendants or Mediator Chickedantz, *see Schroeder*, 1993 WL 832829, at *6 (rejecting plaintiff's duress argument where there was no evidence suggesting any wrongful act by Defendants). Sablic's conclusory, unsupported assertion that he was coerced into signing the Agreement is simply not enough. *See Allen*, 2011 WL 3163232, at *2.

In short, Sablic came down with a rapid case of buyer's remorse after the mediation and now regrets entering into the Memorandum of Agreement and the separate attorney fee agreement. But beyond his bottom-line assertion that he thinks he deserves more money, he offered nothing that ultimately questions the validity and enforceability of either agreement.

Accordingly, Defendants' motion to enforce the settlement agreement will be GRANTED.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Enforce Settlement Agreement (Docket # 36) is GRANTED.  Defendants are ordered to deliver the agreed settlement sum to Sablic's counsel.  Defendants shall then notify the Court that the delivery has been made and, once it receives such notice, the Court will dismiss this case with prejudice.

SO ORDERED.

Entered this 5th day of November, 2012.

/S/ Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge